Filed 7/26/21  In re K.A. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re K.A. et al., Persons Coming Under the Juvenile Court Law. | C093012 |
| EL DORADO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.A.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. SDP20190030 & SDP20190031) |

B.A., father of the minors, K.A. (age 6) and H.A. (age 8), appeals from the juvenile court's visitation order.  (Welf. & Inst. Code, § 362.1.)[1]  He contends there was insufficient evidence to support the order for supervised visitation.  We will affirm the juvenile court's order.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### Juvenile Dependency Petition and Detention Hearing

On October 9, 2018, Lassen County Child and Family Services (Lassen CFS) and a police officer responded to a call at B.A.'s home. It was reported that the minors K.A. and H.A.'s half sibling, A.E., had told a friend that B.A. paid her older brother to touch her in private places. A.E., however, denied the allegations and had no known older brother. Subsequently, the minors' mother V.A. (Mother) reported to Lassen CFS that she believed B.A. produced child pornography because she found a SanDisk card in appellant's things which had pictures of the minors naked and posed. Mother agreed to a safety plan that she would not allow B.A. to have any contact with the children, file a restraining order against him, and seek Lassen CFS services. However, it was reported that B.A. was in the home thereafter, and an emergency multidisciplinary interview (MDI) was scheduled and the children were taken to the district attorney's office for an interview.

During the MDI, half sibling A.E. disclosed that at the approximate age of six she was living in Nevada and was home alone with B.A. when an unidentifiable man came to the home, spoke with B.A. about money, and then sexually assaulted her while B.A. left the room. A.E. reported she took the pictures on the SanDisk card because they were having a fashion show and included pictures in the bath and pictures she did not take. A police detective attempted to interview H.A., however, the detective alleged that H.A. had been heavily coached. Mother claimed B.A. was not living in the home he had just been visiting. B.A. was interviewed regarding the allegations and stated he did not know why A.E. made such accusations and felt she needed mental help.

On November 7, 2018, Lassen CFS filed a juvenile dependency petition for the children K.A. and H.A. against B.A. and Mother alleging in part that the half sibling's allegations against B.A. of sexual exploitation placed K.A. and H.A. at risk of physical and emotional harm, damage, danger, and sexual abuse. Lassen CFS recommended the

2

minors be detained from B.A. and he be offered services but contact between the minors and B.A. would be detrimental to the minors' well-being.

At the November 8, 2018, detention hearing, B.A. denied the allegations of the petition. The juvenile court found a prima facie showing was made that the children came within section 300 and ordered them detained from B.A. The court permitted B.A. to have supervised in-person visitation with his children one time per week, for a total of two hours, with no other contact. The court ordered services be provided as soon as possible to reunify the children and family.

As of the date of the November 21, 2018, jurisdiction report, no visitation occurred because B.A. was working in Nevada and had difficulty with traveling.

**Jurisdictional Hearing**

The juvenile court held a jurisdictional hearing on November 26, 2018. B.A. submitted on the November 7, 2018, petition and filed a waiver of rights. Accordingly, by a preponderance of the evidence the allegations in the petition were held to be true.

**Disposition Report and Disposition Hearing**

The disposition report filed on December 6, 2018, indicated that both parents had not met with Lassen CFS since the jurisdictional hearing. According to the report, Lassen CFS attempted several times to contact Mother since the jurisdictional hearing, and Mother failed to meet with Lassen CFS. The report further indicated that no visitation occurred and discussed contacts made with Mother about visitation, however, did not indicate any contact was made with B.A. as to his visitation. Lassen CFS stated it was not able to develop a case plan for the parents' services "due to their lack of participation." Lassen CFS provided a case plan for the children only.

At the December 10, 2018, disposition hearing, counsel stipulated to disposition and the court found clear and convincing evidence of circumstances justifying removal of the children from B.A. under section 361, subdivision (c)(1). B.A. had no objection to the county counsel's request that he report to Lassen CFS to set a case plan.

**Interim Reports and Hearing**

In advance of a scheduled interim hearing, the minors' court-appointed special advocate (CASA) filed a CASA report and recommendations on January 3, 2019. The CASA reported that B.A. had two visits with the children the week prior to when the report was filed and that visitation was an issue because B.A. lived some distance from the minors' placement. On January 4, 2019, Lassen CFS filed a supplemental report to the dispositional report filed on December 6, 2018. B.A. met with Lassen CFS after the dispositional hearing and participated in the development of his case plan. B.A.'s case plan included general counseling, a parenting education program, and a substance abuse outpatient program with submission to drug and alcohol testing. At the January 7, 2019, interim hearing, counsel stipulated to the Lassen CFS proposed case plan for B.A.

**Six-month Review Reports and Hearing**

In advance of the scheduled six-month review, the CASA filed a report and recommendations on June 6, 2019. The CASA reported that during a supervised visit between B.A. and the minors, the minors were playful with B.A. for the first part of the visit and the visit was normal. On June 14, 2019, Lassen CFS filed a status review report recommending that family reunification services (FRS) continue for B.A. B.A. made weekly contact with Lassen CFS since his case plan started, attended visits on a weekly basis, and checked in with Lassen CFS and provided drug testing. B.A. moved to more time and less supervision for his visitation with the goal of beginning overnight visits in the near future. Lassen CFS reported that the prognosis of the children returning to B.A. was likely.

The court held B.A.'s continued section 366.21, subdivision (e) review hearing on June 24, 2019. The hearing was set for contest on July 2, 2019, by Mother because Lassen CFS recommended to terminate FRS for her. The court adopted Lassen CFS's recommendation to terminate FRS for Mother and ordered FRS continue for B.A.

4

**12-month Review Reports and Hearing**

Lassen CFS filed a report recommending B.A. continue to be provided FRS. B.A. complied with his case plan and attended therapy every two weeks to address the issues of his sexual exploitation charge and his substance abuse history. Additionally, he completed a parent education, coparenting, and family stabilization course. He began overnight visitation every weekend with his children and after his roommates' background check completion, he continued his overnight visits in his home. Lassen CFS recommended the family would be best served by transferring the case to the county of B.A.'s residence.

At the December 9, 2019, section 366.21, subdivision (f) 12-month review hearing, the court found that B.A. substantially complied with his case plan and ordered his FRS to continue finding that there was a substantial probability return of the children to B.A. by the 18-month permanency hearing date. The court granted the request to transfer the juvenile dependency case to El Dorado County, California where B.A. resided.

**Interim Report and Hearing**

Following transfer to El Dorado County, on February 18, 2020, the El Dorado County Health and Human Services Agency/Social Services/Child Protective Services (El Dorado CPS) filed an interim report. El Dorado CPS detailed concerns about B.A.'s mental health services not addressing the issues that originally brought him to the attention of child protective services. El Dorado CPS spoke with B.A.'s therapist and was informed that Lassen CFS did not inform him that he was to address the sexual exploitation and sexualized behaviors with B.A., which were outside his scope of practice. Further, El Dorado CPS reported that B.A.'s previous parenting class was insufficient and his drug testing was infrequent and requested B.A. participate in an updated substance abuse assessment. El Dorado CPS conducted a home visit but was not permitted to enter by B.A.'s roommate while B.A. was not at home. There was a

5

marijuana scent when B.A.'s roommate opened the door. El Dorado CPS informed Lassen CFS of their concerns about finding marijuana on the counter and beer in the restroom when they returned a few days later to conduct a home inspection. El Dorado CPS's assessment stated that B.A.'s case plan services appeared appropriate, but felt he had not alleviated the concerns that brought the family to the attention of the court as the services he engaged in were inadequate "to meet his needs." El Dorado CPS noted concern about the overnight visitation and recommended that B.A. travel to the area of the children's placement, reducing his visitation to a minimum of one time weekly for four hours.

The Douglas County Sheriff's Department supplemental narrative was also included in the interim report, opining that the inappropriate photographs of the children previously alleged to have been taken by B.A. were taken by another child. The child, H.A., disclosed that her half sibling had taken " 'bad' " pictures of her. The sheriff's department deemed the case inactive.

At the March 4, 2020, continued transfer in review hearing, El Dorado CPS informed the court that B.A.'s case plan was updated to reflect services needed for reunification. The court adopted the case plan as submitted.

**18-month Review Report and Hearing**

On May 1, 2020, El Dorado CPS filed a section 366.22 review report indicating that B.A. agreed to participate in the court-ordered services with the service providers recommended by El Dorado CPS. B.A. began random urinalysis and tested positive for THC. B.A. attempted to engage in court-ordered services but was unable to start some services due to the closure of the community service providers on direction of the statewide shelter-in-place order. B.A. completed his drug and alcohol program and attended Alcoholics Anonymous meetings weekly, but it was determined he did not qualify for substance use disorder treatment. He started an intake packet from Professional Services Associates, an organization he was referred to in order to address

6

the sexual exploitation of the minors' sibling. Following the shelter-in-place order, B.A. had video chat visitation with the minors at a minimum of two times per week.

El Dorado CPS's assessment indicated that although B.A. participated or attempted to participate in services, significant progress could not be determined. Because B.A. was unable to make progress with the court-ordered services due to service providers being closed, El Dorado CPS recommended he continue with court-ordered services in order to be able to make substantial progress towards reunification and requested the section 366.22 18-month review hearing continued 90 days. The court granted the request.

El Dorado CPS filed an addendum report on July 20, 2020, noting that the minors reportedly enjoyed visits with the parents. Both children stated they would like to reunite with both parents and described the best case scenario in which they spent half of their time with Mother and the other half with B.A.

Appellant continued to engage in services and attended weekly meetings with Professional Services Associates in order to address the sexual exploitation allegations. B.A. was rated at a low risk of recidivism based on the risk assessments. After speaking to B.A.'s counselor at Professional Services Associates, El Dorado CPS noted concern about whether B.A. benefitted from the treatment because he withheld "pertinent" information and failed to disclose details associated with the original allegations. B.A. informed his therapist he felt the allegations were fabricated. B.A. visited with the children once weekly and participated in video chat visits that were monitored by the foster family. The children were excited for the video visits but had trouble focusing during the calls. El Dorado CPS assessed that there was a substantial likelihood for reunification and believed it was in the best interests of the children to continue FRS.

On July 29, 2020, the court held the section 366.22 18-month review hearing. B.A. did not oppose El Dorado CPS's request to continue the 18-month review hearing

7

and requested the court set the matter for contest. The court set the contested 18-month review hearing for August 28, 2020.

El Dorado CPS filed an additional addendum report on August 25, 2020, noting that B.A. continued to attend weekly nurturing parenting groups facilitated by El Dorado CPS and completed the program. El Dorado CPS's assessment indicated that reunifying and returning the children with Mother would be in the children's best interest. El Dorado CPS believed B.A. had not addressed the issues that brought him before the court and lacked insight into the case and his responsibilities for reunification with the children. Further, El Dorado CPS was concerned that K.A. reported that B.A. told him an El Dorado CPS social worker was a " 'monster' " and a bad person who wants to keep the minors away from their father. Therefore, El Dorado CPS recommended B.A. continue receiving visitation enhancement services to address the substantiated allegations to ensure appropriate visitation could continue.

On August 28, 2020, the court held a contested 18-month review hearing. El Dorado CPS's counsel requested the court return the children to Mother and B.A. receive reunification services. Appellant did not oppose the request that the children be returned to Mother's care but requested a contested hearing as to B.A.'s services. The minors' counsel agreed with return to Mother but requested that B.A.'s reunification services be terminated. The court ordered that B.A. receive visitation enhancement services, ordered return of the children to Mother, and continued the 18-month review hearing.

**Contested Section 366.22 18-month Review Hearing**

On September 18, 2020, the court held the contested section 366.22 18-month review hearing. The minors' counsel joined in El Dorado CPS's recommendation to provide visitation enhancement services. The court discussed B.A.'s consistent participation in services and its concern with reinstituting B.A.'s unsupervised visitation. The court was concerned about reinstituting the visitation because there was no full and complete information about where B.A. lived and who resided with him. The court was

8

also concerned with B.A.'s "lack of candor on the part of the sexual offender therapist." The court requested a report indicating the therapist believed there was no risk to the children before allowing unsupervised visits. The court observed, "I do think that he's in denial about the factual allegations that were sustained by the court in Lassen County and what his -- what his potential culpability is as it relates to reunification with his children, and at the end of the day, I have to make a decision based on the best interest of the children, and the best interest of the children are having parents who aren't discussing the case with them, are fully participating in court-ordered counseling, and do whatever they need to do to try and satisfy the concerns that brought them -- brought their case and their family before the [c]ourt."

El Dorado CPS clarified that B.A. had in fact been getting approximately eight-hour unsupervised visits during the day. B.A. agreed to continuing his counseling, participation in the 12-step meetings, and random testing whenever El Dorado CPS requested it. El Dorado CPS confirmed B.A. had provided his temporary address.

El Dorado CPS Social Worker Galina Melamed testified that she supervised the social worker assigned to B.A.'s dependency case and the assigned social worker no longer worked in the child protective services department. Melamed did not personally review all of the files from Lassen CFS but was aware that B.A. had unmonitored overnight and weekend visits with the minors. El Dorado CPS did not change the overnight visitation order until February 19, 2020, but did not file a request of change in court order. However, El Dorado CPS recommended unmonitored day visits at the hearing.

When asked about a report that the child H.A. displayed traumatized behavior after beginning overnight visits with B.A. where she would wake up screaming "[g]et off me" and covering her vaginal area, Social Worker Melamed testified that was a factor in her recommendation. Melamed testified that from her observation of B.A. berating his caseworker and his denial of the allegations, he was not taking the case seriously.

9

Melamed testified B.A. would berate the caseworker and testified about one instance when the child K.A. expressed anger because he heard B.A. call the caseworker a monster, declaring that his father does not lie. She confirmed that it was her recommendation B.A. continue his unsupervised day visits as long as he continued to participate meaningful in his enhancement services.

B.A.'s counsel requested the court order B.A.'s visitation to remain as unsupervised day visits as there was no evidence of risk to the children. El Dorado CPS's counsel submitted on the report and the recommendation that the children be placed with Mother and B.A. receive enhancement services while continuing to receive visitation as previously ordered but if the visitation was supervised, the enhancement services would no longer be necessary. After hearing additional information during the hearing, the minors' counsel recommended more stringent than court-ordered requirements for B.A.'s visitation and that B.A.'s services be terminated because she was concerned about B.A.'s inappropriate comments about the caseworker. Mother's counsel joined the minors' counsel's position.

The juvenile court stated it had concerns that there was no action by El Dorado CPS to change the visitation given the allegations that were made. The court took issue with B.A. denying the sexual allegations that were reported and his statement claiming that all charges were dropped. However, the court acknowledged that there were no criminal charges because the half sibling recanted. Further, the court noted that despite previously warning B.A. to "have no discussions whatsoever with either of the children related to this action whatsoever," K.A. reported that B.A. called the caseworker a "monster." Based on B.A.'s conduct, the court was "stunned that there wasn't a request for supervised visitation" from El Dorado CPS. The court indicated it wanted supervised visitation for B.A. initially but would revisit the issue once the court heard information from the therapist about "controls" to put in place to ensure that the children were protected during visits. The court stated it wanted to set an interim hearing date to get a

10

report from the therapist and get reports concerning any testing and 12-step meetings B.A. participated in as well as a report on supervised visitation.

The court ordered supervised contact between B.A. and the children for a frequency of four hours once a week or twice a week for two hours and did not terminate B.A.'s services. At the close of the hearing, the court set an interim hearing.

B.A. filed a timely filed a notice of appeal on November 9, 2020.

## DISCUSSION

As his sole contention on appeal, B.A. contends the juvenile court abused its discretion in ordering supervised visitation. Specifically, B.A. contends the juvenile court erred in considering factors that did not indicate a finding contrary to the best interests of the children, such as B.A.'s comment about his caseworker. As we shall explain, the claim lacks merit.

Section 362.1 provides in part: "(a) In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide as follows: [¶] (1)(A) Subject to subparagraph (B), for visitation between the parent or guardian and the child. Visitation shall be as frequent as possible, consistent with the well-being of the child. [¶] (B) No visitation order shall jeopardize the safety of the child. . . ." (§ 362.1; see *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 838-839 [visitation may be limited if the juvenile court finds it is not in the child's best interest].)

A visitation order "necessarily involves a balancing of the interests of the parent in visitation with the best interests of the child. In balancing these interests, the court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) In visitation matters, the juvenile court is accorded broad

11

discretion. We review an order setting visitation for abuse of that discretion. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) " ' 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, after considering the statements and opinions of the social workers, service providers, and therapists, the court concluded that visitation needed to return to supervised as unsupervised was no longer appropriate nor was it in the best interests of the minors. In so concluding, the court expressed concern with the fact that B.A. had made inappropriate comments to the minors about their caseworker and had denied the sexual allegations. The court advised it wanted further information before ordering unsupervised visitation, including a report from the therapist, reports concerning any testing and 12-step meetings B.A. participated in, and a report on supervised visitation.

Thus, the court concluded supervised visitation, at least until the next interim hearing, was appropriate and in the minors' best interests "to ensure that the children are protected during those visits." " 'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. This is especially true where the custody of minor children is involved. . . . Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control.' " (*In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482, 1492.) We do not substitute our judgment for that of the trial court.

B.A. asserts the evidence of his engagement with court-ordered services established that unsupervised visitation would be in the minors' best interests. However, complying with the reunification plan by attending the required therapy sessions and parenting classes and visiting the child does not guarantee return of the child. (*In re*

12

*Dustin R.* (1997) 54 Cal.App.4th 1131, 1143; *In re Joseph B.* (1996) 42 Cal.App.4th 890, 899-901.) While compliance with the plan is a pertinent consideration, it is not the sole concern for the juvenile court, nor is it determinative. (*In re Dustin R.*, at pp. 1139-1140; *In re Joseph B.*, at pp. 899-901.) Rather, the decision to return the child to parental custody depends on the court's assessment of the effect the return would have on the physical and emotional well-being of the child. (§ 366.21, subd. (f).) In light of the circumstances here, it was reasonable for the court to take appropriate steps to carefully control the transition from supervised to unsupervised visits to ensure the well-being of the minors. The court observed, "I do think that he's in denial about the factual allegations that were sustained by the court in Lassen County and what his -- what his potential culpability is as it relates to reunification with his children, and at the end of the day, I have to make a decision based on the best interest of the children, and the best interest of the children are having parents who aren't discussing the case with them, are fully participating in court-ordered counseling, and do whatever they need to do to try and satisfy the concerns that brought them -- brought their case and their family before the [c]ourt." Further, the court properly noted the lack of reporting on B.A.'s prior visits and reporting from his therapist on sexual behaviors. It was appropriate and reasonable for the court to order supervised visitation on a temporary basis to allow El Dorado CPS to gather more information about B.A.'s behavior with the minors and B.A.'s progress in therapy. Based on the record before us, we cannot conclude the juvenile court's order for supervised visitation " ' "exceed[s] the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*In re Stephanie M., supra*, 7 Cal.4th at p. 318.)

We conclude the evidence supported the juvenile court's exercise of discretion to order supervised visitation.

13

## DISPOSITION

The juvenile court's visitation order is affirmed.

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
RENNER, J.